JOURNAL ENTRY AND OPINION
{¶ 1} T.T.,[1] the subject of an order of permanent custody to the Cuyahoga County Department of Child and Family Services, was born prematurely and suffers from a multitude of severe and permanent physical and mental disabilities. T.T. was three years old at the time of the hearing at issue in this matter; she could neither walk nor crawl. She was wholly non-verbal. She receives nourishment through an implanted feeding tube because she is unable to swallow, and she is fed with a dry powdered formula that needs to be mixed with distilled water in precise proportions. She has a cardiac problem and has undergone both a cardiac catherization and open heart surgery; she has a pulmonary problem and undergoes frequent aerosol treatments. She has a gastrointestinal problem and has undergone stomach surgery, and takes a multitude of daily medications, including prescription diuretics, necessitating constant attention to and balancing of her fluid intake. These severe disabilities result from a chromosomal abnormality, and the record indicates that she will need full-time care for the rest of her life.
 {¶ 2} Both of T.T.'s parents are mentally challenged, Father with an I.Q. variously measured at 65 and 79, and Mother with an I.Q. of 71. Mother works at a daycare center, and Father is on social security disability for reasons not apparent from the record. Father additionally suffers from an anger management problem that has caused ongoing difficulty with case workers, nursing staff and most particularly, *Page 4 
the foster parents. Both Mother and Father are functionally illiterate, neither has a driver's license, and neither have friends or family members willing to provide transportation for them and T.T. on any consistent basis.
 {¶ 3} T.T. was born on December 22, 2003 and remained hospitalized until August 2, 2004. Nine days after she came home with her parents (who had been trained in her care by the hospital staff), she was re-hospitalized because she suffered from dehydration and extreme weight loss. She was immediately placed in the temporary custody of the Cuyahoga County Department of Children and Family Services (the "Agency"), who then placed her in specialized foster care. She has remained in the temporary custody of the Agency, and in the possession of the same foster parents ever since.
 {¶ 4} During the period of time that T.T. has been in foster care, case plans were constantly created and amended, and all form and fashion of parental visitation/possession tried. Home health care aides and nurses were constantly in attendance to her and the parents were trained and retrained to meet her physical needs.
 {¶ 5} The record is replete with instances of misunderstandings, miscommunications and failures of care when T.T. was in the possession of her biological parents. It is not necessary to the resolution of the matters before us, *Page 5 
however, to evaluate each and every one of them. It is sufficient that we note that most, if not all, of the crises resulted from the inexorable interface between the child's overwhelming disabilities and the parents' overwhelming personal limitations. It is important in resolution of this matter, however, that this court note the extraordinary efforts made by the Agency, T.T's caregivers and T.T.'s foster parents in attempting to work out a plan, short of permanent custody to the Agency.
 {¶ 6} Nevertheless, despite two extensions of temporary custody, on May 16, 2006, the Agency filed for permanent custody of T.T., and it is from that award that Father appeals.
 {¶ 7} Father has stipulated (and there is no evidence to the contrary in the record) that pursuant to R.C. 2151.414(B)(1)(d) that "the child has been in the temporary custody of one or more public service agencies or private child placing agencies for 12 or more months of a consecutive twenty-two month period * * *." Grounds therefore exist for an order of permanent custody.
 {¶ 8} The trial court also found pursuant to R.C. 2151.414(E) that the "child could not be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents" as particularly set forth under R.C. 2151.414(B)(1)(a). Neither Father nor the State challenge the findings made by the court under R.C.2151.414(E), but the State notes that the trial court "could" also *Page 6 
have found that the parents abandoned the child under R.C.2151.414(E)(10).[2] We find no error in the trial court's omission to make this finding; surely under the facts of this case, a trial court could conclude that Father's failure to visit T.T. for more than 90 days was due to his illness, his lack of funds, and his intellectual and emotional limitations, rather than a callous indifference to his child.
 {¶ 9} The second requirement for an order of permanent custody under R.C. 2151.414(B) requires that the trial court make a determination as to the best interest of the child. The factors that the court may consider (in addition to any other factors the court may deem relevant) are found in R.C. 2151.414(D). An analysis of these factors is difficult in this case, primarily because T.T., although three years old, is not verbal, and despite observations of her behavior from allies of both Father and the Agency that they perceive as a special relationship with either Father or the foster parents, there is objectively very little in the record to indicate to a neutral observer with whom the child is primarily bonded.
 {¶ 10} R.C. 2151.414(D) outlines a list of non-exclusive factors to be considered by the court in determining the best interest of the child: *Page 7 
 {¶ 11} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child[.]" As indicated above, due to the child's severe disabilities, the usual observations of bonding are difficult, if not impossible, to assess. But there is ample evidence in the record that the majority of this child's life has been spent in the care of her foster parents, and that they are devoted to the enormous task of her care. There is also clear evidence that when in the care of the parents, there are miscues and miscommunications that adversely affect the health and safety of the child.
 {¶ 12} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child[.]" The child at issue is not communicative and hence this consideration is not applicable.
 {¶ 13} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999[.]" This has already been answered in the affirmative.
 {¶ 14} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." Father argues that the court should have considered a *Page 8 
planned permanent living arrangement ("PPLA") pursuant to R.C.2151.353(A)(5). R.C. 2151.353(A)(5) clearly states that a child may be placed "in a planned permanent living arrangement with a public children services agency, if a public services agency or private child placingagency requests the court to place the child in a planned permanentliving arrangement * * *." (Emphasis added.) No request was made by the Agency in this case, and it would appear from a simple reading of the statute, that an agency request is a necessary prerequisite to such a placement.
 {¶ 15} Accordingly, the finding of the Cuyahoga County Juvenile Court that the Agency proved by clear and convincing evidence grounds to support an award of permanent custody to the Agency, and that it was proved by clear and convincing evidence that such placement was in the best interest of T.T., is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, JUDGE JAMES J. SWEENEY, P.J., and *Page 9 
COLLEEN CONWAY COONEY, J., CONCUR
[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.
[2] The court did, however find under 2151.414(E)(1) that the parents failed to remedy the problem that caused the child to be removed in the first instance and that they failed to substantially benefit from services provided for them, and hence have not substantially reduced the risk to the child. The court also found that the parents could not provide necessities for the child or prevent her from suffering physical, emotional or mental neglect. *Page 1